Mr. Fogdahl for the Appellant, Mr. Birch for Appellee, U.S. Sentencing Commission. Good morning. Good morning, Your Honors, and may it please the Court. I'd like to address at the outset an error that underlies many of the Commission's arguments in this case,  as the District Court's analysis below, and that is the tendency to conflate the 100-to-1 crack-to-powder quantity ratio in the original mandatory minimum sentence provisions of the Anti-Drug Abuse Act with the Commission's 100-to-1 ratio that it created when it mechanically incorporated the statutory ratio into the sentencing guidelines. Now, in 1995, it was clear that the major contributor of the sentencing disparity between black and white cocaine offenders was not due to the mandatory minimum sentence provisions, but was in fact due to the Commission's decision to incorporate the 100-to-1 ratio into the guidelines. And it's important to keep in mind that the Commission didn't just incorporate it at the minimum threshold level, but extended it through 17 other quantity levels. Now, to its credit, the Commission recognized the problem and took steps to correct it by passing the 1995 Amendment. Congress thwarted that effort in the Disapproval Act. If you prevail, what do you get? This is a mandamus action. You win. What do you get? We get an order directing the Commission to give effect to the 1995 Amendment. To 1-to-1, right? Not 18-to-1, but to the 1-to-1 ratio. Am I understanding it? Under 28 U.S.C. 994-P, the amendments shall take effect if not disapproved. So the Commission would have an order to implement the 1-to-1 ratio. Yes. And then take the next step of making a determination of retroactivity. That's right. I was just trying to address the standing issue, because there's a redressability argument by the government, right, that says that, as I understand it, that you wouldn't get anything different than the 18-to-1 that you have. Therefore, there's no reason for you to be here. You've already got the relief you want. But I just wanted to flesh out. You disagree with that. You think the result of mandamus action would be a 1-to-1 ratio in front of the Commission for them to determine whether it's retroactive or not, right? Yes, yes. And there's two components to the redressability argument that the Commission is making, as I understand it. And the first component is that the initial determination as to retroactivity is discretionary. And then the second component is this issue with the 18-to-1, more recently. How do you respond to the discretionary, or the argument that it's discretionary, therefore not regressible? As to the retroactivity determination? Yes, yes, yes. That's clear. The statute mandates that the Commission make a determination as to retroactivity. And this Court's standing cases are clear. That's enough. Right. Where an agency is obligated to make a decision one way or the other, that's enough to support mandamus. Now, on the 18-to-1 issue, we recognize that's more complicated. But at the end of the day, the mandamus remedy is ultimately an equitable remedy. And if there's been a violation, the Court … What do you mean it's more complicated? Why isn't it simply a matter of if you get the mandamus, we're asking the law to … You're asking, say, Congress has nothing to do with this now. What they did was unconstitutional. Yes. And we're left with the one-to-one ratio. Is it not that straightforward? No, that's right. That's right. That's our argument. That's our argument. The 95 amendments shall take effect given that the Disapproval Act is a nullity. The question … And the 95 amendments would displace the 18-to-1 ratio. Now, it may not be necessary for the Court or the District Court on remand to go that far. A remedy could simply give effect to the 95 amendments from the date of disapproval until the date that the 18-to-1 ratio took effect so that that category of crack cocaine prisoners can get the benefit of the amendment. So it isn't necessary for the Court to go the complete … But your problem is once you … If you survive the standing hurdle, you've got a pretty significant merits problem on mandamus, don't you? I mean, what's the duty here? Congress is … I mean, we've already looked at this and said the Disapproval Act was constitutional. How do you get around that? Well, this Court's precedents on the crack cocaine disparity fall into two categories. Most of the precedents deal only with the statutory, mandatory minimum sentence provisions, which aren't at issue. Now, there is United States v. Pickett. There is. And the Pickett footnote. And our response on that is threefold. Number one, it is dicta. The Court did not need to reach that issue. The Booker issue in that case was a sufficient basis to vacate the sentence. That's not the definition of dicta, though. Just because the Court could have rested on another ground, the fact of the matter is the Court rested on that ground. So there's an article by Henry Friendly, and I forget what it's called, in Praise of Erie and the New General Federal Common Law that makes that point rather powerfully because the matter with Brandeis was being criticized because he was stating dicta in Erie v. Tompkins. So I think it's clear it was argued and it was rejected. And I'm cognizant that Your Honor wrote the opinion. If you're telling me it's not dicta, I understand that. There are two additional responses that we have to the Pickett footnote. The second is that the posture is fundamentally different in this case from that case. That was a direct appeal reviewing a sentence, and the holding by definition is simply that on the record in that direct appeal, the defendant did not demonstrate a constitutional violation. This is a pleading stage case. We're under Rule 8. We're entitled to have the facts assumed in our favor, inferences drawn in our favor, and the issue in this case is whether Mr. Davis has adequately alleged that the disapproval act is unconstitutional, whether under strict scrutiny review or rational basis review. That's the issue here. That was not the issue in Pickett. So the posture is critical. It clearly differentiates the holding in Pickett from the case we have before you today. And I hope I've addressed your question, Your Honor. Again, turning to the merits issues, as I was saying before, most of the precedents before this Court addressed only the statutory, mandatory, minimum sentence provisions. That issue does not control the outcome here. In fact, this Court said very well in Pickett that the function of the mandatory, minimum sentence provisions was simply to create a two-tiered penalty structure for major and serious drug offenders. And that two-tiered structure, whatever its merits, that two-tiered structure doesn't dictate the shape that the sentencing guidelines should take. The Commission's decision to implement the rigid 100-to-1 ratio in the sentencing guidelines is a separate and distinct constitutional problem from the statutory, mandatory, minimum sentence provisions, and therefore Congress's disapproval of the 95 amendments that would have fixed the problem is a distinct constitutional injury that isn't controlled by the Court's prior precedents. Just on the merits, if there weren't precedent, how do we second-guess Congress's judgment at the time that there was more societal harm from crack than from powder cocaine? And maybe that's wrong as a matter of policy, or maybe subsequent study has proved that to be based on ill-considered judgment, but that was Congress's judgment at the time. Again, they make judgments all the time in the criminal code, as you're well aware, that they have to make judgments about different kinds of crimes and different kinds of societal harm and attach different penalties to them. How do we second-guess that? And two responses to that, Your Honor. First, what the evidence cited by the Commission shows is that it's possible that some enhanced ratio is appropriate for crack and powder cocaine. But that can explain why there would be a disparity with respect to the mandatory minimum sentence provisions, and maybe a disparity there is appropriate. The issue here is not that disparity. The issue here is that the sentencing guidelines at the time took that disparity, the 101 disparity, and projected it rigidly through all the quantity levels in the guidelines. And so if there's a rational basis for some disparity between crack and powder, that doesn't mean there's a rational basis for 101. It also doesn't mean that there's a rational basis to project the same ratio rigidly over all quantity levels. And it was really that decision, the fact that the ratio was used at every quantity level and was mandatory and had to be applied by district, it was that that caused the racial disparity in sentencing. So it's not the mandatory minimum sentence provisions that caused the disparity. It's the decision by the Commission to use that disparity in the guidelines in the way that it did. And so we're not second-guessing a congressional judgment about a differential in the mandatory minimums. That may or may not have been appropriate. We're not challenging that. We're challenging the rigidity of the guidelines, which at the time, pre-Booker, had to be applied. And it was really that, and the Commission recognizes this, it was really that that created the disparity in sentencing. Thank you very much. Thank you. We'll give you back a couple of minutes. You didn't ask for a rebuttal, but I presume you want some. We'll give you back a couple of minutes for a rebuttal. Thank you. Mr. Burge. Good morning. Good morning, Your Honor. May it please the Court. The distinction that counsel is trying to draw between the actions of the Commission and the actions of Congress don't make any material difference to the equal protection analysis. The equal protection analysis for minimum rationality looks at the government reason or any conceivable reason. But 100 to 1, 100 to 1, I mean Congress itself decided that 100 to 1 was a bit much, right? Eventually, yes. And going back to 18 to 1, I think you've got a strong rational basis argument that 18 to 1 is not. What about this, what I call the echo effect, the idea that 100 to 1 was, the effect of it was scattered throughout the guidelines and that Congress didn't address that. What do you do about that? Do you just say 100 to 1 is okay? Yes, that's what the case law says. I mean, and that's the level of generality that the case law requires for this issue, is you look at any conceivable basis, whether it's what Congress articulated or not, and then you say, is this not irrational? And if you can find a rational basis for it, that suffices. And that's explicitly what the case law says, not just Holton and Pickett, but the cases they cite, Johnson before that, Thompson, Cyrus before that. This Court has passed on the 100 to 1 ratio many, many times and found that the fairly summary explanation of the reasons suffices. That same analysis controls here. It's that simple. You don't need to get that far, though, right? I mean, isn't Pickett your strongest argument? Yes, Pickett is clearly our strongest argument. The footnote 1, as Judge Randolph pointed out, explicitly rejects a claim. That's a holding. It rejects a claim. It's not dicta. And it's the same claim that is made here, that the disapproval act is somehow different and that analysis needs to be somehow run through the mill again. The analysis has been run through the mill again, generously in Pickett, and rejected. That controls here, and that suffices to affirm. The district court's decision below, indeed, it's hard to find how it could possibly have gone any differently. It identified the correct case law. It interpreted it correctly, and it applied it correctly. There's simply no other outcome that this panel can reach without going en banc and then potentially in gross conflict with the Supreme Court case law on equal protection analysis. If there are no further questions, we're prepared to rest on our brief on the other issues.  Thank you, Your Honor. I have two minutes just to rebut. Nothing new, but just if there's something Mr. Burch said that you want to take issue with, please do. Number one, while this court, again, has passed on the 100 to 1 ratio in the statutory mandatory minimum, aside from Pickett, this court has not addressed the constitutionality of the disapproval act. What's a phrase like that supposed to mean, aside from Pickett? Pickett, we did it. It only takes one. Again, the issue in Pickett was different. The posture was different. But if we disagree with you on that, the case is over, right? If Pickett controls, there's no mandamus. The posture has to mean something. To my knowledge, to our knowledge, this issue has never been raised in a Rule 8 case. All of the analysis of this issue has taken place in the context of direct appeals of criminal sentences. There's never been a situation in which the issue of whether the plaintiff, in this case Mr. Davis, had adequately alleged a constitutional violation, was entitled to inferences in his favor, maybe some discovery, to build a record. That's never been decided in this court or, to my knowledge, in any other court. So the posture has to mean something. And then the last thing I'll say is, in the Pickett footnote, as we point out in the briefs, the focus is on whether there was a race-neutral reason to reject one-to-one. The focus was not on whether there was a race-neutral reason to require one-hundred-to-one, which is what Congress, in fact, did. Thank you. Thank you very much. We have your argument. The case is submitted.
judges: Griffith, Kavanaugh, Randolph